IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>DARAYL D. DAVIS, )<br>) | Case No. 23 CV 3620<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION & ORDER**

Petitioner Darayl D. Davis brings the instant motion to vacate, set aside, or correct his sentence for ineffective assistance of counsel pursuant to 28 U.S.C. § 2255. For the reasons discussed below, petitioner's motion (Doc. 1) is denied.

**BACKGROUND**

On June 26, 2018, petitioner was charged in a sixteen-count superseding indictment with: five counts of wire fraud in violation of 18 U.S.C. § 1343; four counts of mail fraud in violation of 18 U.S.C. § 1341; one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1); and six counts of engaging in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957. These charges arose from petitioner's creation, promotion, and operation of a complex multi-state scheme to defraud individuals who trusted him to place their funds in safe investments. Petitioner's victims lost approximately $5,143,649 over the course of approximately twenty years.

The parties began plea negotiations after petitioner's trial was continued due to the COVID-19 pandemic. The parties set a change of plea date during a telephonic status hearing with petitioner on the line. When questioned by the court, one of petitioner's counsel, Damon Cheronis ("Cheronis"), stated that it would be agreeable to conduct the plea colloquy by telephone. Petitioner did not object. On September 24, 2020, the court entered a written order

1

regarding the scheduled change of plea pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), § 15002(b)(2)(A), Pub. L. No. 116-136, 134 Stat. No. 21-1854, 281 (2020). The plea hearing was reset for January 19, 2021, after the parties twice requested that the court reset the date. Petitioner did not object to the telephonic format of the change of plea date in any of these instances.

On January 19, 2021, petitioner pled guilty to count six of the superseding indictment (mail fraud) pursuant to a written plea agreement. Before proceeding, Cheronis confirmed with the court that he had discussed the matter with petitioner, and they again agreed to proceed via telephone pursuant to the CARES Act. The court informed petitioner that petitioner could stop the proceedings to consult with his counsel "for any reason at all," and petitioner acknowledged that he understood. After petitioner was placed under oath, he acknowledged that he had time to talk with his lawyers, told them everything that he knew about the case, and was satisfied with counsel's efforts on his behalf.

Petitioner acknowledged that he received a copy of the plea agreement, and "extensively" discussed it with his attorneys before signing it. He agreed that he understood that the court would not determine the appropriate guidelines range for petitioner's sentence until the court received the presentence investigation report ("PSR") and the parties' sentencing memoranda. Petitioner also acknowledged that he understood that the court could impose a sentence that was greater or lesser than the guidelines range, and if the court imposed a sentence that was higher, greater, or harsher than he hoped for, petitioner would have no right to withdraw his guilty plea. Petitioner admitted that he waived his right to appeal his sentence with narrow exceptions.

The plea agreement provided that the government would dismiss the fifteen other counts and forfeiture allegation in exchange for an appellate waiver. It outlined the preliminary

sentencing guidelines calculations, which included:

- a. an 18-level increase in the base offense level pursuant to Guideline § 2B1.1(b)(1)(J) because the loss amount was more than $3,500,000 but less than $9,500,000;
- b. a two-level increase pursuant to Guideline § 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims;
- c. a two-level increase pursuant to Guideline § 2B1.1(b)(10)(C) because the offense involved sophisticated means and petitioner intentionally engaged in the conduct constituting sophisticated means;
- d. a four-level increase pursuant to Guideline § 2B1.1(b)(20)(A) because the offense involved a violation of securities law and at the time of the offense petitioner was an investment advisor, and
- e. a two-level increase pursuant to Guideline § 3A1.1(b)(1) because the offense involved a person that petitioner knew or should have known was a vulnerable victim.

Petitioner and his counsel took no position on the application of these enhancements at the time of his plea, including the loss amount, and reserved the right to present argument about them at sentencing. Counsel stated that petitioner was "fully advised that it will be Your Honor who decides whether the enhancements apply and what the final loss amount number is."

The government verbally presented the factual basis for count six, as laid out in the written agreement, and petitioner admitted that he had committed the described conduct. Petitioner admitted that he held out his companies, Financial Assurance Corporation ("FAC") and Affluent Advisory Group ("AAG") as "investment firms that provided investment advisory services and offered investment opportunities." Petitioner admitted that he knowingly made materially false representations to investors about purported investments to induce investors to transfer funds to FAC and AAG, including that they would receive "guaranteed protection against the loss of their principals and fixed annual interest payments," and some of these investments were backed by or affiliated with a large, multinational insurance company.

Petitioner also admitted that he knowingly created and provided to investors false and fraudulent investment documents, including fake product and policy overviews, fictitious growth

projections, fake contracts that outlined the purported terms of the non-existent investments, and false account statements that purported to show account growth from guaranteed interest payments. Petitioner admitted that he used fraudulently obtained funds from investors to make payments to other investors, and he often falsely represented that these payments were interest payments or repayments of principal. When investors sought to withdraw funds or requested that he return their principal investments, petitioner falsely represented that he did not have funds available to liquidate their funds or refund their money.

In pleading guilty to count six, which the plea agreement describes as "part of the scheme to defraud," petitioner admitted under oath that he caused Victim Investor D (later identified as Sabrina Black ("Black")) to invest approximately $192,000 into an FAC account. He admitted that he knowingly falsely represented to Black that her investment funds would be held in the custody of a large, multinational insurance company, and her investment offered guaranteed protection against financial loss and annual interest payments. Petitioner admitted that he voluntarily pled guilty because he was guilty of the charged conduct.

Petitioner, however, states that he was advised that he would receive a sentence that was below the guidelines range, and his counsel would challenge the sentencing enhancements as a matter of law. According to petitioner, he was willing to plead guilty to count six in exchange for dismissal of the remaining counts and the aggravated identity theft charge being set for trial. Later, the government agreed to dismiss the identity theft charge, which would have required a mandatory two-year consecutive sentence, if plaintiff agreed to an appellate waiver. Petitioner states that, regarding the aggravated identity theft charge, his counsel told him that they would not "have to deal with it at all" and it would be "off the table," although the other counts "could still be used as relevant conduct for sentencing purposes."

Following petitioner's plea, a probation officer determined in the PSR that petitioner's total offense level was 36, his criminal history category was I, and the guideline range was 188 to 235 months imprisonment. In determining the total offense level, the probation officer found that the base offense level was seven, pursuant to United States Sentencing Guidelines ("USSG") § 2B1.1(a)(1), and the base offense level was increased by the above-listed enhancements, although probation included a four-level enhancement for substantial financial hardship pursuant to USSG § 2B1.1(b)(2)(B) instead of the two-level enhancement for more than ten victims, and also a two-level enhancement for using Melvin Thomas's ("Thomas's") personal identification information, without his knowledge or permission, to obtain a credit card for unauthorized purchases, pursuant to USSG § 2B1.1(b)(11)(C)(i). The base offense level was reduced by three points for acceptance of responsibility pursuant to USSG § 3E1.1(a), (b).

Petitioner countered that the total offense level should be 26, with a guidelines range of 63 to 78 months imprisonment. Petitioner objected to the PSR's <u>sua sponte</u> application of the substantial financial hardship enhancement, in addition to the enhancements for sophisticated means, use of Thomas's personal identifiers, and violations of securities law. Further, petitioner's counsel argued that the 18 U.S.C. § 3553 factors supported a below-guidelines sentence due to petitioner's contrition and acknowledgement of the harm to victims. Petitioner also countered the government's sentencing memorandum, which discussed petitioner's "extravagant" personal expenditures and whether his clients signed promissory notes that promised that he would "invest" their funds. Petitioner filed a letter with the court, expressing his remorse for his "criminally bad decisions" and "illegal financial scheme," which harmed people who called him "friend" and "brother," and resulted in "substantial monetary loss."

Petitioner's sentencing hearing occurred via video conference on May 3, 2021. Two of

petitioner's counsel, Cheronis and Matthew Madden ("Madden"), were present via video link, and petitioner was present via video link from his counsel's conference room, where he sat with Ryan Levitt ("Levitt"), Cheronis and Madden's associate. During the hearing, both petitioner and his counsel acknowledged that they understood their agreement to proceed via video conference. According to petitioner, he could communicate with Cheronis and Madden only through Levitt, who could send text messages to Cheronis but "refused to do." For example, petitioner claims that Levitt refused to text Cheronis about paperwork from the Securities and Exchange Commission ("SEC") that allegedly showed that he repaid $1.5 million of the loss amount that factored into the court-ordered restitution, because it would be "getting into the weeds," and "they're not going to do that."

During the sentencing hearing, the parties argued about the sentencing enhancements and factors under § 3553, and both petitioner and his victims were given the opportunity to speak. While petitioner's counsel conceded the substantial hardship[1] and vulnerable victim enhancements, counsel argued against the enhancements for sophisticated means, unauthorized use of Thomas's personal identification information, and violations of securities law.

The court rejected petitioner's challenges to the sophisticated means and securities law enhancements, but it concluded that the identity theft enhancement did not apply, although Thomas testified during the hearing that he did not authorize the credit card. Regarding the sophisticated means enhancement, counsel argued that petitioner operated a "garden variety Ponzi scheme" rather than an "elaborate," sophisticated scheme. The court rejected this argument due to the length of time and number of people in petitioner's scheme, in addition to petitioner's copied financial documents and "elaborate impersonations of success and

---

[1] According to the PSR, five or more victims suffered substantial financial harm because they were retired and their lost loans came out of their retirement funds, or their lost loans caused them to change employment.

sophistication in investing."

Regarding the investor advisor enhancement, counsel argued that it did not apply because petitioner was not selling securities in exchange for compensation. The government countered that petitioner's scheme involved selling unregistered "bonds or promissory notes; i.e., securities that were issued by FAC," for his own compensation. Moreover, the government argued that petitioner "marketed himself as an investment advisor who is offering his advice as to the value of securities or the advisability of investing in, purchasing, or selling securities." The court concluded that the issue was not "even close," and petitioner "was definitely an investment advisor."

Petitioner admitted during his allocution that he was guilty of fraud and his actions harmed his victims. Defendant expressed remorse for betraying his victims' trust and friendship, and he received a sentencing reduction for acceptance of responsibility. This court sentenced petitioner to 160 months of imprisonment and three years of supervised release after concluding that petitioner's advisory guidelines range was between 151 to 188 months. The court further concluded that the uncontested restitution amount was $7,171,085.[2]

Defendant subsequently appealed his sentence, arguing that this court erred by holding his plea hearing via telephone conference, and the Seventh Circuit rejected his appeal on March 29, 2022. The Seventh Circuit held that defendant waived any error regarding the application of the CARES Act by agreeing to the appellate waiver in his plea agreement. See United States v. Davis, 29 F.4th 380, 384–87 (7th Cir. 2022). Further, the Seventh Circuit concluded that even if defendant did not waive the right to appeal any error in the district court, he waived the right to

---

[2] In the instant motion, petitioner challenges the restitution amount and argues that a "302 memo" (i.e., a third-party memorandum that sets out a witness's out-of-court statement) shows that the government used purported losses from accounts with FAC that never existed. When he raised the issue with his counsel, petitioner claims that his counsel told him to "cut the shit" and "the government had no reason to make it up."

7

object to his telephonic plea hearing when he failed to do so, in addition to affirmatively consenting to the telephonic procedure on two separate occasions. Id. at 387. On June 8, 2023, defendant filed the instant petition to vacate, set aside, or correct his sentence pursuant to § 2255.

## LEGAL STANDARD

Prisoners convicted of federal crimes may move the district court that imposed the sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255. A petitioner can receive relief by demonstrating that his sentence was imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The Sixth Amendment to the U.S. Constitution guarantees criminal defendants the right to effective assistance of counsel.

To show ineffective assistance of counsel, a petitioner must meet the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), demonstrating that counsel's performance was deficient and resulted in prejudice. For deficient representation, the question is whether "counsel's representation fell below an objective standard of reasonableness" based on "the range of legitimate decisions regarding how best to represent a criminal defendant," with "wide latitude" for "making tactical decisions." Id. at 689. For prejudice, the question is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

## DISCUSSION

According to petitioner, his counsel provided ineffective assistance for various reasons: (1) counsel (Cheronis, Madden, and Levitt) provided misleading and inaccurate advice during plea negotiations that induced him to plead guilty; (2) counsel failed to ensure that the sentencing hearing maintained a minimum of "civilized procedure"; (3) counsel failed to investigate and present mitigating evidence at petitioner's sentencing hearing; (4) counsel agreed to a change of

8

plea hearing without ensuring compliance with the CARES Act, and appellate counsel did not properly raise the issue on direct appeal; and (5) cumulative errors denied petitioner his right to effective representation.

First, the court evaluates whether petitioner's counsel provided ineffective assistance when negotiating petitioner's plea agreement. According to petitioner, he was "unwavering that he would not plead guilty to [the aggravated identity theft charge] based upon the exonerating evidence he possessed." However, petitioner did not proceed to trial on that charge after the government agreed to dismiss it in exchange for an appellate waiver. Petitioner argues that if he had known that the government would present Thomas's testimony, as well as evidence related that charge and other dismissed charges, in aggravation at sentencing, he would not have agreed to plead guilty. Relatedly, petitioner argues that he would not have pled guilty if he knew that his counsel would not challenge <u>all</u> sentencing enhancements.

The government counters that petitioner has not met his burden to show that his counsel's advice leading up to his change of plea was outside the range of professionally competent assistance." Petitioner must provide objective evidence that he would not have pled guilty without such advice, and his own self-serving testimony is insufficient. See <u>Koons v. United States</u>, 639 F.3d 348, 351 (7th Cir. 2011). The government emphasizes that petitioner falsely claims that he would have contested "the entire fraud narrative," because he admitted in the plea agreement and plea colloquy that this narrative was true.

The court agrees with the government that petitioner has not provided evidence that his counsel acted outside the range of professionally competent advice or reasonable strategy. Petitioner was given the opportunity to deny the factual basis for the government's fraud narrative, both before signing the agreement and after hearing the government's factual recitation

during his plea hearing. Petitioner admitted the facts under oath in both instances, and he admitted responsibility in his letter to the court. Such admissions are inconsistent with petitioner's § 2255 challenge, and representations by a petitioner and his counsel are a "formidable barrier" in any subsequent collateral proceeding. Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).

In any case, the court rejects petitioner's argument that he had ineffective counsel because he did not know that the government would use evidence and testimony related to the dismissed charges in aggravation. Petitioner emphasizes that the identity theft charge was "off the table," which he understood to mean that facts related to that charge would not be presented at sentencing. The court, however, is not persuaded that petitioner's alleged misunderstanding demonstrates that counsel was ineffective. Because the court did not apply the enhancement related to petitioner's alleged identity theft, petitioner has not demonstrated prejudice.[3]

With respect to the other sentencing enhancements, petitioner's counsel clarified in both the plea agreement and on the record that they had not formulated a position on them, which counsel discussed with petitioner, and reserved the right to present argument at the time of sentencing. Cheronis specifically stated on the record that the defense "may call into question the actual loss amount as well as some . . . significant enhancements," which petitioner did not contradict. (Emphasis added). Petitioner acknowledged that he understood that the court would determine which guidelines applied, and pled guilty despite his counsel's qualifying statement.

Consequently, the court concludes that petitioner has not met his burden to demonstrate that his counsel was ineffective during plea negotiations by providing misleading or inaccurate

---

[3] In fact, it was the probation officer, not the government, who first suggested in the PSR that the identity theft enhancement might apply. Petitioner's counsel would have had no clear reason to proactively advise petitioner on the possibility that this enhancement might apply to his case.

10

advice that induced him to plead guilty. Even if petitioner now feels misled by his counsel's advice, he has not shown that his representation was objectively deficient or prejudiced him.

The court next evaluates petitioner's second argument, which is that his representation was ineffective because his counsel failed to ensure a "minimum of civilized procedure." Petitioner argues that he was denied the opportunity to communicate with counsel because the hearing proceeded by video and he was only in the same conference room as Levitt (an associate), not Cheronis or Madden (lead counsel). Levitt was able to text Cheronis during the hearing, but petitioner argues that his right to consult "with his counsels of record was left to [Levitt's] discretion," and Levitt refused to text Cheronis. Petitioner argues that he would not have pled guilty if he knew that counsel would avoid "getting into the weeds" about the enhancements and restitution calculation.[4]

The court agrees with petitioner that the opportunity to privately communicate with counsel is an important component of meaningful access to counsel. See Dreher v. Sielaff, 636 F.2d 1141, 1143 (7th Cir. 1980). The court, however, notes that petitioner admitted that counsel was present in the room with him during his video sentencing hearing, albeit not lead counsel. He does not suggest that he was unable to receive legal advice from Levitt, who filed an appearance in his case. Regardless, the crux of petitioner's claim is that he wanted Cheronis to object to the proposed restitution figure, but challenges to restitution awards are not properly addressed by § 2255 petitions, which challenge only custody. See Virsnieks v. Smith, 521 F.3d 707, 717–18 (7th Cir. 2008); Barnickel v. United States, 113 F.3d 704, 705–06 (7th Cir. 1997).

---

[4] Further, petitioner argues that counsel's sentencing setup was prejudicial to him because he and his counsel were "caught off guard" when Thomas provided a statement at sentencing. He argues that counsel "should have requested a continuance to schedule an in-person hearing" to call their own witnesses and present documentary evidence, in addition to cross-examining Thomas. The court rejects this argument because, as discussed above, the court did not apply the enhancement related to Thomas and petitioner's alleged identity theft.

11

Thus, petitioner has not demonstrated that he was prejudiced by Levitt's representation.[5]

Petitioner's third argument is that his counsel was ineffective when they failed to investigate and present mitigating evidence on his behalf, including client files, corporate documents for both FAC and AAG, and certain witnesses. According to petitioner, this evidence would have demonstrated that he had "operated a legitimate and highly successful business for nearly 20-years," "obtained legitimate loans for legitimate business purposes," and "used the monies he received from his clients for legitimate business investments." Further, he argues that the evidence would have shown that the various victims "were fully aware of and supported [his] business ventures," and did not expect interim payments on their loans.

This argument is related to petitioner's claim that his counsel was ineffective for failing to use mitigating evidence to challenge the sentencing enhancements. According to petitioner, the substantial hardship enhancement should not have applied because none of these victims experienced a change in their financial situation due to their lost funds. Moreover, in challenging the sophisticated means enhancement, petitioner argues that counsel should have maintained that he did not operate a Ponzi scheme at all; according to petitioner, he ran a highly successful business with fully repaid loans with typical terms, with Black as the exception.[6]

The court notes that petitioner's desire to relitigate his sentencing hearing and present the arguments that he waived from appellate review is an improper foundation for his § 2255 challenge. As the Seventh Circuit stated in Bridges v. United States, 991 F.3d 793, 802 (7th Cir. 2021), it is not enough to show that a challenge to the enhancement should have prevailed;

---

[5] This is also true because the SEC document that petitioner would have used to challenge the restitution amount was postdated January 19, 2023, whereas petitioner's sentencing hearing occurred on May 3, 2021.
[6] Despite pleading guilty to count six and admitting that the facts contained in the plea agreement were true, petitioner still expected his counsel to argue that Black was fully aware that a large, multinational insurance company did not hold her investment, nor offered guaranteed protection against financial loss.

12

rather, the issue is whether his defense lawyer failed to provide effective assistance of counsel by conceding the enhancement rather than objecting to it.

The court rejects petitioner's arguments based on purportedly mitigating evidence. Where petitioner's counsel unsuccessfully challenged certain enhancements (i.e., for sophisticated means and violations of securities law), petitioner has not shown that his counsel's arguments were ineffective rather than merely unsuccessful. Petitioner may offer alternative arguments against these enhancements, but he offers only conclusory assertions that counsel made objectively deficient arguments, or that his arguments would have changed the outcome.[7] In fact, petitioner's assertion that he did not operate a garden variety Ponzi scheme is contradicted by his own admissions (in the plea agreement, in the plea colloquy, and in his letter to the court), which state that petitioner fraudulently obtained funds from investors and used these funds to "make Ponzi-type payments to other investors." Petitioner may have pled guilty only to count six, but his plea agreement states that he induced Black to invest "[a]s part of the scheme." (Emphasis added).

That being said, whether it was objectively deficient for his counsel to concede certain enhancements (i.e., enhancements for substantial harm to victims and vulnerable victims) and the loss amount is a separate analysis.[8] The court concludes that petitioner has not shown that it was deficient for his counsel to concede the substantial harm to victims and vulnerable victim enhancements. It is not objectively unreasonable to refrain from making meritless sentencing arguments, Faucett v. United States, 872 F.3d 506, 512 (7th Cir. 2017), and petitioner himself

---

[7] Counsel, for example, is not constitutionally required to present every witness that their client suggests to them. See United States v. Balzano, 916 F.2d 1273, 1294 (7th Cir. 1990). Counsel must believe that the witness will add competent, admissible, and non-cumulative testimony to the record. Id.

[8] While petitioners cannot challenge the amount of restitution in a § 2255 petition, they can challenge the calculated loss amount where it factors into their sentence. See, e.g., Brown v. United States, No. 14-CR-206, 2016 WL 1583605 (N.D. Ill. Apr. 20, 2016).

admitted in his letter to the court that his fraudulent scheme caused his victims to suffer "substantial monetary loss." Moreover, he admitted that he took advantage of his victims (who called him "friend" and "brother"), which was the basis for the court's determination that his victims were vulnerable.[9] To argue otherwise might have risked losing the reduction for acceptance of responsibility, which requires truthful admission of the conduct comprising the offense. See United States v. Sandidge, 784 F.3d 1055, 1063–64 (7th Cir. 2015). Such strategy might also have risked an enhancement for obstruction of justice under USSG § 3C1.1.

Regarding the loss amount, petitioner expected his counsel to contest the loss amount using evidence that one account (from "Sir Love") was false, but the government counters that it did not include this account (which petitioner does not support with documentation) in its calculation. The court agrees with the government that petitioner has not met his burden to demonstrate that his counsel was objectively deficient by conceding to the proposed loss amount, especially where he does not provide an alternative calculation below $3.5 million. The later SEC-calculated loss amount is still above the guidelines range for the relevant enhancement.

The court also rejects petitioner's argument that both sets of counsel (before the district court and the Seventh Circuit) were ineffective because they did not properly argue that his telephonic plea hearing was noncompliant with the CARES Act. According to plaintiff, he did not object to a telephonic hearing because he did not know it could proceed otherwise. He argues that "counsels rushed [him] into entering a plea by telling him that any delay would be regarded as if he were deliberately stalling or obstructing the efficient administration of justice." Moreover, petitioner argues that appellate counsel was ineffective because counsel waived the

---

[9] The court stated that, "When you talk about vulnerable victims, I've never seen a more vulnerable group of people. And not just because that they were—they were intellectually challenged or anything like that. That's not where their vulnerability came from. Their vulnerability came from the fact that they looked at you as a brother, as a member of their own congregation in faith, and you took advantage of that and shamed them in the process."

argument that the district court did not make any findings on the necessity of a videoconference.

This court, however, will not reconsider issues in petitioner's motion that were decided on direct appeal. See Varela v. United States, 481 F.3d 932, 935–936 (7th Cir. 2007). Petitioner's challenges to counsel performance are proper, but his express consent to the telephonic hearings waives any issue with compliance under the CARES Act. See United States v. Coffin, 23 F.4th 778, 779 (7th Cir. 2022). Petitioner acknowledged during his plea hearing that he understood the rights that he waived, and regardless, he does not explain how he was prejudiced with his telephonic plea hearing. He does not argue that he would not have pled guilty if his hearing was conducted via video conference or in-person. Petitioner also does not provide a compliance issue that was "both obvious and clearly stronger than the issues . . . raise[d] on appeal." Smith v. Gaetz, 565 F.3d 346, 352 (7th Cir. 2009).

Last, because the court rejects all above arguments for relief, it also rejects petitioner's argument that cumulative errors denied his right to effective representation.[10] Relatedly, the court denies petitioner's request for a hearing pursuant to 28 U.S.C. § 2255(b), because petitioner has not made the necessary threshold showing. See Martin v. United States, 789 F.3d 703, 706 (7th Cir. 2015).

---

[10] Petitioner argues that his counsel's failure to give him the PSR more than a week before sentencing, failure to seek to suppress evidence that he claims was illegally obtained, and failure to investigate evidence in a storage locker, are cumulative error. He does not, however, provide evidence or more than a conclusory assertion that these actions were ineffective assistance of counsel.

## **CONCLUSION**

For the reasons discussed above, the court denies petitioner's motion to vacate, set aside, or correct his sentence (Doc. 1), and no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(2).

**ENTER:**

Robert W. Gettleman
**United States District Judge**

**DATE: November 27, 2023**